UNITED STATES TRUST COMPANY OF NEW YORK et al.,
as Trustees under the Will of HERMAN WRONKOW,
Deceased, Appellants and Respondents, *v.* JAMES G.
BLAKE, Respondent and Appellant, and MARGARET
LUEZ, Respondent.

New York (city of) — hotels — prevention of fire — fire commissioner has authority to order installation of electric fire
alarm system in buildings used as hotels but has no power
to make changes in fire escapes, that being within jurisdiction
of superintendent of buildings — when fire commissioner may
order additional standpipes for water for fire in hotel building — when lessee of hotel responsible for installation of fire
protection instead of landlord.

1. Under section 762 of the Greater New York charter and subdivision 2 of section 21 of the Code of Ordinances of New York city
relating to fires and fire prevention, the fire commissioner of the city
has authority to direct the installation, in a building used as a hotel,
of " an adequate interior electric fire alarm system with bells and
gongs; " also to order to be installed window-frames, sashes and doors
of fireproof design at points particularly described; but has no
authority to direct changes to be made in the construction of fire
escapes.  The superintendent of buildings has full and exclusive power
and authority (New York Building Code, § 152) to direct fire escapes
and other means of egress to be provided in buildings used as hotels,
and the charter (§§ 774 and 775) does not make the jurisdiction
of the fire commissioner concurrent, in this respect, with that of the
superintendent of buildings.  The commissioner under those sections
may enforce what the superintendent has prescribed, and where there
is no claim that fire escapes departed from the requirements of the
superintendent of buildings, the fire commissioner is without authority
to change the method of construction.

2. Where a hotel in the city of New York consists of three buildings,
nine stories in front and ten stories in the rear, connected in the
cellar and on the first floor, but separated above by brick party walls,·
two of which buildings are equipped with standpipes for water, the
fire commissioner under sections 580 and 581 of the Building Code
has authority and it is his duty (Greater New York Charter, §§ 774
and 775) to order the installation of a standpipe in the third building,

18

which has none. The powers of the fire commissioner are not withdrawn by section 650 of the Building Code. Fire commissioners and the building superintendent have concurrent powers of supervision within their respective spheres of duties. The buildings in question although known by a single name and for some purposes to be grouped as one, are to be taken, in applying sections 580 and 581 of the ordinances, as several and distinct. Standpipes in two would not dispense with a standpipe in the third.

3. Where an order of the commissioner directing the repair of electrical equipment was made after an examination and report of inspectors approved by the chief inspector of the fire department, the order being signed by the chief clerk in the name of the commissioner, the signature being made with a rubber stamp, the order is not void as an unlawful delegation of discretionary power. The commissioner has directed generally and in advance that whenever an inspector reports a defect and the chief inspector concurs, an order shall issue, and in so doing he does not abdicate his office or its duties. The order after reciting the defects merely directs the owner to " remove the violation," without attempting to circumscribe the choice of means or remedies.

4. Where a hotel in the city of New York was leased for a term of years to a lessee who covenanted that she would, at her own expense, comply with all municipal, state and federal laws relating to or affecting such premises and make all improvements that might be ordered or required by officers authorized to enforce such laws; and such lessee afterward assigned the lease to another, who assumed the obligation to comply with its provisions, and the fire commissioner of the city of New York thereafter made two orders directing certain improvements as safeguards against fire, which orders were served on the landlords who sent a copy thereof to the assignee of the lease, but none to the lessee, and the assignee failed to act, the landlords, who thereupon did the work at their own expense, may maintain an action against the assignee to recover the costs of such improvements, but no notice having been served upon the lessee she cannot be held liable.

*United States Trust Co.* v. *Blake,* 196 App. Div. 289, modified.

(Argued October 23, 1922; decided November 21, 1922.)

CROSS-APPEALS from a judgment, entered May 10, 1921, upon an order of the Appellate Division of the Supreme Court in the first judicial department sustaining in part and overruling in part plaintiff's exceptions,

ordered to be heard in the first instance by the Appellate Division, and directing judgment accordingly.

*M'Cready Sykes* and *George L. Shearer* for plaintiffs, appellants and respondents. In the interpretation of statutes the *ejusdem generis* rule may not properly be so extended as to defeat the manifest purpose of an enactment made in furtherance of the public safety. (*Fire Dept.* v. *Gilmour*, 149 N. Y. 453; *People* v. *Kaye*, 212 N. Y. 407.) The fire department order for the installation of a fire alarm system was a valid and enforcible order. (L. 1901, ch. 466, § 762; L. 1914, ch. 459, § 774.) The fire department order for the standpipe and other equipment was a valid and enforcible order. (Ord. of 1915, ch. 12, art. 2; Cosby's Code of Ordinances [ed. 1915], 222; *Matter of Browning* v. *Adamson*, 175 App. Div. 526; *Lantry* v. *Hoffman*, 55 Misc. Rep. 261; 124 App. Div. 937.) The *ejusdem generis* theory is not applicable to any of the alterations ordered by the fire department. (*People* v. *131 Boerum St. Co.*, 233 N. Y. 268.) The order of the department of water supply, gas and electricity was a valid and enforcible order. (*Tenement House Dept.* v. *Weil*, 76 Misc. Rep. 273; *Williams* v. *U. S.*, 1 How. 290; *Wilcox* v. *Jackson*, 13 Pet. 498; *Woolsey* v. *Chapman*, 101 U. S. 755, 770.) The plaintiffs were not required to give notice to the defendant Luez to perform her own covenant, of the non-performance of her covenant or that plaintiffs had themselves caused the work to be done. (*U. S. Trust Co.* v. *Blake*, N. Y. L. J. June 29, 1918, 1086; *Douglass* v. *Howland*, 24 Wend. 35; *Cohen* v. *Margolies*, 192 App. Div. 217.)

*John P. O'Brien*, Corporation Counsel (*John F. O'Brien* of counsel), for City of New York. The fire commissioner's order requiring the installation of " an adequate interior electric fire alarm system with bells or gongs " is sustained by the express language of section 774 of the charter and by that of chapter 12, article 2, section 21,

subdivision 2, of the Code of Ordinances. (*People v. Kaye*, 212 N. Y. 407.) The fire commissioner's orders in so far as they relate to the installation of fireproof doors, fireproof windows and fireproof skylights, are clearly valid. (L. 1914, ch. 459, §§ 774, 775; Code of Ordinances, ch. 12, art. 2, § 20; *Matter of Browning*, 175 App. Div. 526; 220 N. Y. 585; *People v. Kaye*, 212 N. Y. 407; *People v. 131 Boerum Street Co.*, 233 N. Y. 268; *Matter of Robinson*, 203 N. Y. 380.) The fire commissioner's order relating to the installation of a standpipe and water tank is also valid. (*Lantry v. Hoffman*, 55 Misc. Rep. 261; 124 App. Div. 937; *Cohen v. Margolies*, 192 App. Div. 217; *Frank v. Bowman Auto Co.*, 195 App. Div. 377.) The order of December 19, 1916, was the order of the commissioner of water supply, gas and electricity. He did not attempt to delegate discretionary power but, in a uniform manner, exercised his power whenever the reports of inspectors disclosed an unsafe condition. (*Wilcox v. Jackson*, 13 Pet. 497; *Williams v. U. S.*, 1 How. [U. S.] 290; *Woolsey v. Chapman*, 101 U. S. 755, 770; *Tenement House Dept. v. Weil*, 76 Misc. Rep. 273; *Pearlbery v. Levisohn*, 112 Misc. Rep. 95.)

*Schuyler C. Carlton* for defendant, respondent and appellant. There is no proof that any order was ever made by the department of water supply, gas and electricity with which the plaintiffs or the defendants had to comply. (*City of Hudson v. Fleming*, 139 App. Div. 327; *Matter of Barlow*, 141 App. Div. 640.) The alleged order of the fire department, No. 37765F, constitutes no ground of action against the defendants (*City of New York v. U. S. Trust Co.*, 116 App. Div. 349.) The requirements of the fire department order No. 37765F are not within the contemplation of the parties. (*May v. Gillis*, 169 N. Y. 330; *Gillet v. Bank of America*, 160 N. Y. 549.)

*Bertram L. Kraus* for defendant, respondent.

CARDOZO, J. The plaintiffs are the owners of the Schuyler Hotel in the city of New York. The hotel was leased for a term of years to the defendant Luez, who covenanted that she would " at her own expense perform and fully satisfy all municipal and United States regulations, laws and ordinances which might relate to and affect the said demised premises, and all ordinances, regulations and requirements of the Board of Health, Bureau of Buildings, Tenement House Department, and any and all other municipal departments, bureaus and officials whatsoever, and make all improvements that might be ordered or required by such public or municipal authorities." Luez afterwards assigned the lease to Blake, who assumed the obligation to comply with its provisions. In June, 1915, two orders were made by the fire commissioner of the city of New York directing certain improvements as safeguards against fire. These orders were served upon the landlords, who sent a copy to Blake, the tenant in possession. No notice was given to Luez, the original lessee. Blake failed to act, and the landlords did the work at their own expense. In their first cause of action they are seeking reimbursement for these payments at the hands of Blake and Luez. A second cause of action grows out of an order signed or purporting to be signed by the commissioner of water supply, gas and electricity. This order directed the repair of defective electrical equipment. The landlords made the repairs, and again are seeking reimbursement.

The court at Trial Term dismissed the complaint as to the first cause of action upon the ground that there was no jurisdiction in the fire commissioner to require the improvements covered by his orders. It dismissed the complaint as to the second cause of action upon the ground that the order of the commissioner of water supply, gas and electricity was void as involving an illegal delegation of his discretionary powers. Exceptions were ordered to be heard in the first instance at the

Appellate Division. That court affirmed the dismissal of the first cause of action as to both defendants. It reversed the dismissal of the second cause of action as to the defendant Blake, affirming, however, as to the defendant Luez. Both the plaintiffs and Blake appeal to this court.

1. We think the orders of the fire commissioner, with the exception of that part prescribing an alteration of the fire escapes, were within his jurisdiction.

Order No. 37,764 F directs the installation of " an adequate interior electric fire alarm system with bells or gongs." Express authority for such an order is contained in section 762 of the charter of the city of New York and in section 21, subdivision 2, of the Code of Ordinances relating to fires and fire prevention as in force in 1915 (Cosby's Code of Ordinances for 1915, p. 222). Section 762 of the charter provides: " In every building used or occupied as a hotel * * * there shall be placed and provided electrical or other alarms and time detectors, to be approved by the fire commissioner, * * * through which alarms of fire or other danger may be instantly communicated, by means of bells or gongs, to every portion of the building." The ordinance is to the same effect.

Order No. 37,765 F calls for three classes of improvements: (1) window-frames, sashes and doors of fireproof design at points particularly described; (2) a connecting balcony between the top balconies of the east and center fire escapes; and (3) a four-inch standpipe in the easterly building with an adequate tank upon the roof.

(a) The jurisdiction of the fire commissioner to direct the installation of fireproof window-frames, sashes and doors is established by our recent decision in *People* v. *No. 131 Boerum Street Co.* (233 N. Y. 268).

(b) The jurisdiction to regulate the number and the form of fire escapes has been lodged in the superintendent of buildings to the exclusion of the fire commissioner.

Section 152 of the Building Code as in force in 1915 provides that " every building * * * more than three stories in height occupied and used as a hotel " shall be furnished " with such good and efficient fire escape, stairways, or other means of egress in case of fire as shall be directed by the Superintendent of Buildings having jurisdiction; and said Superintendent shall have full and exclusive power and authority within said city to direct fire escapes and other means of egress to be provided upon and within said building or any of them." Sections 774 and 775 of the charter do not make the jurisdiction of the fire commissioner concurrent in this respect with that of the superintendent of buildings. The commissioner under those sections may enforce what the superintendent has prescribed. The power to regulate is in one; the power to execute is in both. No claim is made that these fire escapes departed from the requirements of the superintendent of buildings. The commissioner was without authority to change the method of construction. The item is a small one, for the cost of the change was only $55. The order to that extent is void.

(c) The jurisdiction of the fire commissioner to direct the installation of a standpipe is sustained by sections 580 and 581 of the Building Code.

These sections provide:

§ 580.  " All buildings now erected, unless already provided with a 3-inch or larger vertical pipe, or hereafter to be erected, exceeding 150 feet in height, shall be provided with an auxiliary fire apparatus and appliances, consisting of water tank on roof or in cellar, standpipes, hose, nozzles, wrenches, fire extinguishers, hooks, axes and such other appliances as may be required by the fire department — all to be of the best material and of the sizes, patterns and regulation kinds used and required by the fire department."

§ 581.  " In every building now erected, unless already

provided with a 3-inch or larger vertical pipe, which
exceeds 100 feet in height, and in every building hereafter
to be erected exceeding 85 feet in height, and when any
such building does not exceed 150 feet in height, it shall
be provided with a 4-inch standpipe, running from cellar
to roof, with one two-way 3-inch Siamese connection to
be placed on street above the curb level, and with one
2½-inch outlet, with hose attached thereto on each floor,
placed as near the stairs as practicable. If any of the
said buildings extend from street to street, or form an
L shape, they shall be provided with standpipes for
each street frontage."

The Schuyler Hotel consists of three buildings, nine
stories high in the front and ten stories in the rear. The
buildings are connected in the cellar and on the first
floor, but are separate above, cut off by impenetrable
party walls. In 1915 a four-inch standpipe was in the
westerly building, a three-inch standpipe in the center
one. The easterly building was unprotected. It was
there that the order directed a new standpipe to be
installed. Having in view the method of construction
as detailed in the report of the chief examiner of the
bureau of fire prevention, we think that the three build-
ings, though known by a single name and for some
purposes to be grouped as one, are to be taken, in applying
sections 580 and 581 of the ordinances, as several and
distinct. Standpipes in two would not dispense with a
standpipe in the third. Identity of name is not a sub-
stitute for unity of structure.

If a separate standpipe was necessary in the easterly
building as in the others, the fire commissioner was under
a duty, specifically imposed by statute, to see to it that
the equipment was supplied. He is empowered " to
enforce all laws and ordinances " in respect of " the
prevention of fires and danger to and loss of life and
property therefrom," and " the installation and main-
tenance of automatic or other fire alarm systems and

fire extinguishing equipment " (Charter, § 774). He is further empowered to " order in writing " the remedying of conditions which are found to violate the laws or ordinances in respect of fires or their prevention (Charter, § 775). These powers are not withdrawn by section 650 of the Building Code, charging the superintendent of buildings with the general duty of enforcing the provisions of the Code, and of signing and issuing the notices essential to that end. Statute and ordinance may stand together. Fire commissioner and building superintendent have concurrent powers of supervision within their respective spheres of duty (*Lantry* v. *Hoffman*, 55 Misc. Rep. 261, 264; affd., on opinion below, 124 App. Div. 937).

The defendant says that, for all the record shows, the height of the building does not exceed one hundred feet. No such point was made upon the trial. The number of stories together with the date of construction leaves little doubt as to the facts. Upon another trial the omission can be supplied.

The conclusion thus reached makes it unnecessary to consider whether authority to make the order might be derived from other sources, if sections 580 and 581 of the Building Code were thought to be inapplicable (Charter, § 762; chap. 12, art. 2, § 20, New York City Ordinances, Cosby's edition for 1915, p. 222; *People* v. *Kaye*, 212 N. Y. 407; *People* v. *No. 131 Boerum Street Co., supra*).

3. We uphold the order directing the repair of defective electrical equipment.

The commissioner of water supply, gas and electricity has a staff of inspectors. In the nature of things, it is impossible that he should personally examine every building in which electricity is used. Ninety thousand certificates of inspection are issued in a year. The practice followed in this instance has been long in force. The practice is for an inspector who discovers defective conditions to report to the chief inspector. Upon the latter's

approval of the report, an order to repair the defect is signed by the chief clerk in the name of the commissioner, the signature being made through the use of a rubber stamp. The practice follows the authority conferred by the commissioner himself. He has directed generally and in advance that whenever an inspector reports a defect and the chief inspector concurs, an order shall issue.

We find here no unlawful delegation of discretionary powers. The commissioner, in default of personal inspection, must rely on the advice of others. When his inspector and chief inspector report that there is danger, he can hardly do less than direct that the danger be removed. He does not abdicate his office or its duties by declaring in advance that this course will be pursued. The order in question recites the defects, as, *e. g.*, broken fixtures, faulty insulation, and commands the owner in general terms to " remove the violations." There is no attempt to circumscribe the choice of means or remedies. There is merely a direction to accomplish a result. Such a direction must follow almost as of course. The notice of danger provokes as a matter of routine the warning to abate it.

The line between the ministerial and the discretionary is not preordained and rigid for administrative officers. Administration is a practical business. A doctrinaire formalism must not be suffered to paralyze and thwart it. There are times when a policy may be formulated in advance of the event, and times when the event must precede the formulation of the policy. Government could not go on if the least infusion of discretion on the part of the mandatary would invalidate the mandate. Courts have been governed in these matters by considerations of good sense, of expediency, and of the significance of a course of dealing confirmed by custom and tradition (*Edwards* v. *City of Watertown*, 24 Hun, 426; *Kramrath* v. *City of Albany*, 53 Hun, 206, 208; *People ex rel. Vaughn* v. *Supervisors of Renss. Co.*, 52 Hun, 446, 448;

119 N. Y. 636; *Wilcox* v. *Jackson*, 13 Pet. 498, 513; *Williams* v. *U. S.*, 1 How. [U. S.] 290, 297). It is a question of degree.

4. The plaintiffs failed to establish the liability of the defendant Luez. She had no notice of the orders. The duty to comply with them did not arise till notice was received (Charter, § 778a). If the plaintiffs wished to charge the expense against her as well as against Blake, they should have placed her in default.

The judgment in favor of the plaintiffs and against the defendant Blake upon the second cause of action should be affirmed, with costs to the plaintiffs, and the judgment in favor of said defendant as to the first cause of action should be reversed, and a new trial granted.

The judgment in favor of the defendant Luez should be affirmed with costs.

HISCOCK, Ch. J., HOGAN, POUND, MCLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Judgment accordingly.